IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRYAN V. DAVIS, *et al.*, | ) | CASE NO.: 1:06 CV 357 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| LAWYERS TITLE INSURANCE CORP., | ) | |
| | ) | |
| Defendants. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| | ) | |

This matter is before the Court on Defendant, Lawyers Title Insurance Corp.'s Motion to Dismiss The Complaint. (ECF #14). After careful consideration of the briefs and a review of all relevant authority, Defendants' Motion to Dismiss is DENIED in part and GRANTED in part.

**FACTUAL AND PROCEDURAL OVERVIEW[1]**

This is a class action suit was brought by named Plaintiff, Bryan V. Davis against Lawyers Title Insurance Company ("Lawyers Title") on behalf of himself and all others

---

[1] The facts as stated in this Memorandum and Order are taken from the Complaint and should not be construed as findings of this Court. In a motion to dismiss, the Court is obligated, for the purposes of that motion, to accept as true the facts set forth by the non-moving party, in this case, the Plaintiff.

similarly situated.  The Complaint alleges that Lawyers Title has routinely been incorrectly charging refinancing consumers the full "original rate" rather than the lower "reissue rate" for their title insurance since the mid-1990s.  These rate schedules are published pursuant to the Ohio Revised Code § 3937.03.         Consumers who refinance a previously insured property are often entitled to reissue rates on their title insurance coverage.  Reissue rates are significantly lower than the original title insurance rates because title companies perform less work preparing reissue policies, and they insure against less risk.  Although title insurance policies generally insure the lender and not the consumer against loss, plaintiffs allege that the consumers are the ones who actually pay for the policy.   Plaintiffs seek declaratory and injunctive relief and assert claims for (1) Breach of Contract, (2) Fraud, (3) Breach of Fiduciary Duty, (4) Conversion, (5) Unjust Enrichment, and (6) Breach of Duty of Good Faith and Fair Dealing.

Defendant, Lawyers Title, has filed a Motion to Dismiss the Complaint for failure to state a claim upon which relief can be granted.  Plaintiffs oppose this motion.  Having reviewed all of the parties' submissions (including various notices of supplemental authority), and the relevant law, this Court finds that the Defendant's Motion to Dismiss should be GRANTED in part, and DENIED in part.

**STANDARD OF REVIEW**

On a motion brought under Fed. R. Civ. P. 12(b)(6), this Court's inquiry is limited to the content of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account.  See Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808 (3rd Cir. 1990).  A Complaint

must provide fair notice of what the plaintiff's claim is and the grounds upon which it rests. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002).

In evaluating a motion for dismissal under Rule 12(b)(6), the district court must "consider the pleadings and affidavits in a light most favorable to the [non-moving party]." Jones v. City of Carlisle, Ky., 3 F.3d. 945, 947 (6th Cir. 1993) (quoting Welsh v. Gibbs, 631 F.2d 436, 439 (6th Cir. 1980)). However, though construing the complaint in favor of the non-moving party, a trial court will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations. See City of Heath, Ohio v. Ashland Oil, Inc., 834 F.Supp 971, 975 (S.D.Ohio 1993).

This Court will not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41 (1980). In deciding a Rule 12(b)(6) motion, this Court must determine not whether the complaining party will prevail in the matter but whether it is entitled to offer evidence to support the claims made in its complaint. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

## **ANALYSIS**

A. Breach of Contract/ Breach of Duty of Good Faith and Fair Dealing

The Plaintiffs allege the existence of an "implied-in-fact" contract between themselves and the Defendant. The alleged contract would consist of an agreement between the Plaintiffs and the Defendant by which the Plaintiffs would pay an insurance premium and the Defendant would issue an insurance policy to the lender. Ohio has long recognized contracts implied in law as enforceable contracts. See, Legros v. Tarr, 44 Ohio St.3d 1, 6 (1989); Hummel v. Hummel, 133 Ohio St. 520,

525 (1938); Staffilino Chevrolet, Inc. v. Balk, 158 Ohio App. 3d 1, 14 (2004); see also, Randleman v. Fidelity National Title Insurance Co., Case NO. 3:06-CV-7049 (N.D. Ohio 2006). An implied-in-fact contract requires assent through offer and acceptance, but the terms of the agreement are determined by the Court based upon the facts and circumstances surrounding the transaction. See, Linder v. Am. Natl. Ins. Co., 155 Ohio App. 3d 30, 37 (2003).

Plaintiffs' complaint includes direct and indirect allegations with respect to the essential elements of a claim for breach of an implied-in-fact contract. The Plaintiffs allege that they agreed to pay a premium for the defendant's provision of title insurance, that they paid this premium, and that Defendant provided a policy of insurance to the Plaintiffs' lender(s). Plaintiffs further allege (without specifically spelling it out) that an implied term of the contract was that the Defendant would charge the proper legal rate for the provision of that insurance policy. Ohio law supports this allegation; in Ohio, an inferred term of every contract is that is adheres to the applicable law. See, Gibson v. Meadow Gold Dairy, 88 Ohio St.3d 201, 204 (2000). Finally Plaintiffs allege that this implied term was breached by the Defendant when it charged the Plaintiffs a higher amount than was allowed by law. Thus, Plaintiffs have alleged offer, acceptance, and consideration, thereby establishing the existence of a contract; and they have alleged a breach of one of the terms that contract. Nothing more is required at this stage of the litigation.

All of the additional issues raised by the Defendant rely on factual or legal questions which contradict the facts alleged in the Complaint. Further, Defendant's only basis for requesting the dismissal of the claim for breach of good faith and fair dealing is that claim could not stand in the absence of contract. Because the Plaintiffs have sufficiently alleged the existence of an implied-in-fact contract, and because no other basis for dismissing this claim has been advanced, the Plaintiffs'

claim for breach of good faith and fair dealing also survives.

B. Fraud

A claim for fraud must be pled with particularity. (F.R.C.P. 9(b)). Fraud encompasses negative misrepresentations "such as the failure of a party to a transaction to fully disclose facts of a material nature where there exists a duty to speak." Miles v. McSwegin, 58 Ohio St.2d 97, 99 (1979). The Complaint alleges that the Defendant failed to disclose to the Plaintiffs that they were entitled to a discounted rate on their title insurance premiums; that the Defendant had a duty to disclose this fact because the discounted rates are statutorily mandated; that the Plaintiffs paid the overstated rate, thereby relying on the misrepresentation; and that their reliance resulted in a monetary loss to the Plaintiffs.[2]

The Defendant claims it was under no duty to speak, and that because the proper rates were publically filed, that any reliance Plaintiffs may have placed in the allegedly overstated rates was not justifiable. The question of whether reliance was justifiable is a question for the jury. A jury could easily find that an unsophisticated consumer justifiably relies on an insurance company to charge rates that comply with the insurance company's publically filed rate schedule, and that Consumers should not be held to a standard that requires them to independently verify through the

---

[2]Although the Complaint specifically alleges non-disclosure, the context of the claim could also be viewed as stating a case for affirmative fraud. According to the Complaint, the Defendant represented that the Plaintiffs' title insurance premiums were a particular rate. This representation was false, as the proper premium was statutorily mandated at a lower rate which was known to the Defendant. The Plaintiffs relied on the misrepresentation and paid the higher rate, thereby suffering monetary injury. The Complaint, however, did not include facts setting forth the time and place of the misrepresentation, or who made the misrepresentation to the Plaintiff, and therefore a claim for affirmative fraud would fall short of the Fed. Rule of Civ. Pr. 9(b) requirement that fraud be pled with particularity.

Administrative Code or through the Ohio Title Insurance Rating Bureau that the rates charged by an insurance company are legally valid. The question of whether the Defendants had a duty to speak, however, is a legal question for the court.

The Complaint does not contain sufficient information upon which the Court may make a determination as to the duty to speak in this case. The Defendant's duty to inform the consumers of the proper insurance rate would depend entirely on the relationship between the title insurance company and the Plaintiffs. It is unclear from the Complaint whether the rate was communicated to the consumers by the Defendant, by the lender, or by a third party settlement agent. It is even unclear as to whether the Defendant had any communications whatsoever with the consumer Plaintiffs. However, because this is motion to dismiss, and because the Sixth Circuit generally construes the pleading requirements for fraud liberally, the Court cannot at this stage of the litigation say with certainty that "it appears beyond doubt that the plaintiff can prove no set of facts in support of [their] claim which would entitle [them] to relief." Conley v. Gibson, 355 U.S. 41 (1980). Therefore, the claim for fraud by omission will withstand Defendant's Motion to Dismiss.

C. Breach of Fiduciary Duty

Ohio has not recognized a general fiduciary duty between a title insurance company and a borrower, and other jurisdictions have specifically held that no fiduciary relationship exists in that context. See, e.g., In re Johnson, 292 B.R. 821, 828 (E.D. Pa. Bankr. 2003); Contawe v. Cresent Heights of Am. Inc., 2004 U.S. Dist. LEXIS 20344, *13 (E.D. Pa. Oct. 1, 2004). If the Complaint contained factual allegations that, if true, would show the existence of an agency relationship, or of a relationship involving special trust and confidence there would nonetheless be a factual issue that would preclude dismissal. Plaintiffs, however, have failed to allege any factual basis upon

which such a relationship could be based.

It is true that the Court must take all of the facts set forth in the Complaint as true. However, a trial court will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations. See City of Heath, Ohio v. Ashland Oil, Inc., 834 F.Supp 971, 975 (S.D.Ohio 1993). The Complaint contains general allegations that the Defendant had superior knowledge of the rate schedules at issue in the case. The Court accepts this statement as true, however, superior knowledge is not sufficient to create a fiduciary duty. Greenberg v. The Life Ins. Co. of Va., 177 F.3d 507, 521-522(6th Cir. 1999); see also In re Prudential Ins. Co., 975 F. Supp. 584, 616 (D.N.J. 1996).

The only other statement in the Complaint that supports Plaintiffs' allegation that a fiduciary relationship existed is found in paragraph 34.

> With regard to the collection of premiums for title insurance and the performance of the title examination and other services, Lawyers Title and/or its agents act not only in their capacity as title insurers, but also as agents and fiduciaries for parties like plaintiffs who are involved in real estate transactions. Plaintiffs and the class members reposed a special trust and confidence in Lawyers Title and/or its agents.

The above allegations provide no facts to support a claim of breach of fiduciary duty, they merely make conclusory legal assumptions that do not provide fair notice of the grounds upon which the Plaintiffs' claim may rest. Therefore, the Complaint, as written, fails to properly assert a claim for breach of fiduciary duty.

D. Conversion

Conversion is the "wrongful exercise of dominion over property in exclusion of the right of the owner, or withholding from his possession under a claim inconsistent with his rights." Zacchini V. Scripps-Howard Broadcasting Co., 47 Ohio St. 2d 224, 226 (1976), rev'd on other grounds, 433

U.S. 562 (1977). However, "an action for conversion of money will not lie unless identification is possible and there is an obligation to deliver the specific money in question." NPF IV, Inc. V. Transitional Health Servs., 922 F.Supp. 77, 81 (S.D. Ohio 1996); see also Wiltberger v. Davis, 110 Ohio App. 3d 46, 55 (10th App. Dist. 1996)(noting that the current authority in Ohio holds that generally there can be no cause of action for conversion of money). NPF IV, 922 F. Supp. At 81.

Conversion of money occurs only when the money is specifically earmarked, or capable of identification "such as money in a bag, coins or notes that have been entrusted to the defendant's care, or funds that have otherwise been sequestered." The Plaintiffs in this case do not allege that the money they paid claim to have paid the Defendant was identifiable, or that Defendants are obligated to return the specific money (i.e. specific bills) to the Plaintiffs; they merely claim they are due a refund or credit for an overcharge.

E. Unjust Enrichment

The Ohio Supreme Court has stated that unjust enrichment occurs when a person "has and retains money or benefits which in justice and equity belong to another." Johnson v. Microsoft Corp., 106 Ohio St. 3d 278, 286, 834 N.E.2d 791, 799 (2005). Restitution is available as a remedy for unjust enrichment when the following factors are established: (1) a benefit is conferred by a plaintiff on a defendant; (2) the defendant knows about the benefit; and (3) the defendant retains the benefit under circumstances where it is unjust to do so without payment. See e.g., Hambleton v. R.G. Berry Corp., 12 Ohio St. 3d 179, 183, 465 N.E.2d 1298, 1302 (1984). The purpose of unjust enrichment claims "is not to compensate the plaintiff for any loss or damage suffered by him but to compensate him for the benefit he has conferred on the defendant." Johnson v. Microsoft, 106 Ohio St. 3d at 286, (citing Hughes v. Oberholtzer, 162 Ohio St. 330, 335, 123 N.E.2d 393,

397(1954)). Unjust enrichment is a quasi-contractual equitable claim which is limited to situations where the court may create an implied contract between parties when one side has provided a benefit for which it should be compensated. It is not a substitute for a tort or contract claim.

In this case, the Plaintiffs have alleged that they conferred a benefit on the defendant in the form of an overpayment for the title insurance policy issued in connection with their refinancing. They allege that the defendant knew or should have known that they were overpaid for the policy, and that it would be unjust to allow the defendant to retain that benefit. This is sufficient under the current pleading standards to state a claim for unjust enrichment.

Defendant claims that an unjust enrichment claim cannot lie because the Plaintiff did not pay it directly for the title insurance policy. Defendant compares the transaction in this case to transactions in Eisenberg v. DeGross., No. 1:04 CV 1081, slip op. At 26 (N.D. Ohio Feb. 1, 2006)(Amended Order correcting mistake in case caption to read Eisenberg v. Anheuser-Busch, Inc., issued Feb. 2, 2006) and Johnson v. Microsoft, 106 Ohio St.3d 278, 286 (Ohio 2005). These cases, however, are not analogous to the case currently before the Court.

The closest Plaintiffs in the Eisenberg case could come to alleging that the plaintiff had conferred a benefit on the defendant was to state that they gave money to their children, who used that money to pay a retailer or an adult of drinking age (who then paid a retailer) to purchase alcohol that was manufactured by the Defendants. Just as in Johnson v. Microsoft, the Plaintiff in that case failed to allege any economic transaction whatsoever between themselves and the Defendants.

The only economic transactions the Johnson and Eisenberg Defendants were alleged to have entered into were the transactions by which they sold their generic products to a retailer. Those products were sold without regard to who the final consumer might be, and there is no allegation

-9-

that the Defendant had any control over who the retailer chose to sell its products to.   There was no allegation that the Plaintiffs' actual money was given directly or even indirectly to the Defendants.  Therefore, the Plaintiffs in those case could not establish that the Defendants retained a benefit, conferred by the Plaintiffs, to which they were not entitled.  The chain was clearly broken in these cases when the Defendants sold their product to a retailer or other middleman.

The transaction alleged in this case is much more direct.  Plaintiffs in this case claim that they paid the Defendant (through the settlement process) for the specific policy at issue.  In this case, the product at issue was specifically tailored to the Plaintiffs property; there was no retailer or other middleman involved.  Though the benefit of the policy went to the lender, the payment for the policy is alleged to have come from the Plaintiff.   The Defendant claims that the payment was not received directly from the Plaintiff, but rather was made by the lender.  This is a factual issue that cannot be determined in a Motion to Dismiss.  Further, even if the payment was not made directly by the Plaintiff, this scenario is much closer to the transaction that was at issue in Reisenfeld & Co. v. Network Group, Inc., 277 F.3d 856, 861 (6th Cir. 2002), than those in Johnson or Eisenberg.

In Reisenfeld the Court recognized that a defendant without privity to a transaction or any direct contact with the plaintiff may receive a passive benefit from a transaction that would be inequitable and unjust for the defendant to retain. See also, DVCC, Inc. V. Med. Coll. Of Ohio, NO. 05 AP 237, 2006 WL 496036 (Ohio Ct. Ap. Mar. 2, 2006)(allowing plaintiff's unjust enrichment claim to proceed against defendant not in privity with plaintiff); Steel Quest, Inc. V. City Mark Constr. Serv., Inc., No. C-960994, 1997 WL 674614 (Ohio Ct. App. Oct. 31, 1997)(holding lack of privity does not bar an unjust enrichment claim).   The same is true in this case according to the

allegations set forth in the Complaint. Plaintiffs have sufficiently stated a claim for unjust enrichment.

## **CONCLUSION**

For the reasons set forth above Defendant's Motion to Dismiss the Complaint, (ECF #14), is GRANTED in part and DENIED in part. Counts Four (Breach of Fiduciary Duty), and Five (Conversion) are hereby dismissed; Counts One (Breach of Contract), Two (Breach of the Duty of Good Faith and Fair Dealing), Three (Fraud by Omission) and Six (Unjust Enrichment) remain. IT IS SO ORDERED.


                                                  S/Donald C. Nugent
                                        DONALD C. NUGENT
                                        United States District Judge

DATED:  March 12, 2007